United States District Court
Southern District of Texas
**ENTERED**
February 13, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| P2ES HOLDINGS, LLC, § § Plaintiff. § § V. § § TRINITY PETROLEUM § MANAGEMENT, LLC, § § Defendant. § | CIVIL ACTION NO. 4:22-cv-03002 |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a Motion to Remand filed by P2ES Holdings, LLC ("P2ES"). *See* Dkt. 15. Having reviewed the motion, the response, and the applicable law, I recommend that the Motion to Remand be **DENIED**.

## BACKGROUND

In September 2014, P2ES and Trinity Petroleum Management, LLC ("Trinity") entered into a Master Services Agreement ("MSA"), under which Trinity obtained licenses to use P2ES's software. A dispute eventually arose between the parties related to the MSA. On July 29, 2022, P2ES filed a lawsuit against Trinity in the 334th Judicial District Court of Harris County, Texas, alleging causes of action for breach of contract, declaratory judgment, and quantum meruit/unjust enrichment. On September 6, 2022, Trinity timely removed the lawsuit to federal court. Trinity contends that this Court possesses diversity jurisdiction. P2ES disagrees.

## LEGAL STANDARD

It is widely recognized that "[f]ederal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). There are two types of federal subject matter jurisdiction: federal question

jurisdiction and diversity jurisdiction. Under federal question jurisdiction, a district court can hear and decide any civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction allows district courts to entertain cases in which the amount in controversy exceeds $75,000, and there is complete diversity of citizenship among the parties. *See* 28 U.S.C. § 1332(a). For there to be complete diversity of citizenship, "all [parties] on one side of the controversy [must] be citizens of different states than all [parties] on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quotation omitted).

A federal court "must presume that a suit lies outside this limited jurisdiction" unless "the party seeking the federal forum" proves that the court may permissibly exercise subject matter jurisdiction over the case. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *see also Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) ("The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." (quotation omitted)). "Because removal raises significant federalism concerns, the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quotation omitted); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("Any ambiguities are construed against removal.").

The rules for determining the citizenship of parties are well settled but vary depending on whether the party is an individual, corporation, limited liability company, or some other form of organization. For this case, the important rules are as follows:

> **Individual**: For purposes of diversity jurisdiction, an individual is a citizen of the state of his domicile—that is, the state where he both resides and intends to make his home. *See MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019).

**Corporation**: A corporation is considered a citizen of both its state of incorporation and the state in which it maintains its principal place of business. *See* 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). With rare exceptions, a corporation's principal place of business is the place it maintains its headquarters. *See id.* at 93.

**Limited Liability Company**: The citizenship of a limited liability entity is determined by the citizenship of its members. *See Harvey*, 542 F.3d at 1080. When members of a limited liability entity are themselves entities or associations, citizenship must be traced through however many layers of members there are until arriving at the entity that is not a limited liability entity and identifying its citizenship status. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397–98 (5th Cir. 2009). Where a limited liability company maintains its principal place of business is completely irrelevant for determining its citizenship for diversity jurisdiction purposes. *See Warren v. Bank of Am., N.A.*, 717 F. App'x 474, 475 n.4 (5th Cir. 2018) ("[T]he citizenship of an LLC is determined by the citizenship of its members, not its principal place of business.").

With these general jurisdictional principles in mind, I turn to analyzing whether subject matter jurisdiction exists in this case.

## ANALYSIS

The parties are in agreement that there is no basis for this Court to exercise federal question jurisdiction. The propriety of removal in this case thus hinges on whether diversity jurisdiction exists. To make such a determination, I must identify the citizenship of the sole plaintiff (P2ES) and the sole defendant (Trinity). If P2ES and Trinity are citizens of different states, then complete diversity exists, and I may exercise jurisdiction over this case.[1] If, on the other hand, I conclude that P2ES and Trinity are citizens of the same state, I lack subject matter jurisdiction, and this case must be remanded to state court.

---

[1] P2ES "seeks monetary relief over $1,000,000." Dkt. 1-2 at 2. The parties do not dispute that the amount-in-controversy requirement is satisfied.

To start, it is undisputed that Trinity is a Colorado citizen for diversity purposes. Trinity is a limited liability company. As a limited liability company, Trinity's citizenship is determined by the citizenship of each of its members. *See Harvey*, 542 F.3d at 1080. Trinity's members are: J. Brian Searles, Wilmer (Bill) W. Thieme, and J. Samuel Butler. All three members are domiciled in Colorado. As such, Trinity is properly considered a citizen of Colorado. The parties agree on this.

As for the citizenship of P2ES, the parties disagree. Trinity says P2ES is a citizen of Delaware, and no other state, for diversity purposes. P2ES claims that it is a citizen of Colorado and Delaware for purposes of diversity jurisdiction. I now enter the fray.

P2ES is a limited liability company with two members. Those two members are:

(1) Merrick Holdings, Inc. ("Merrick"). Merrick is a corporation formed under the laws of the State of Delaware.

(2) The Petroleum Place, LLC ("Petroleum Place"). Because Petroleum Place is a Delaware limited liability company, citizenship must be traced through its members until arriving at an entity that is either a corporation or an individual. *See Mullins*, 564 F.3d at 397–98. Petroleum Place's sole member is P2 Newco, LLC ("Newco"). Newco is a Delaware limited liability company, whose sole member is P2 Upstream Acquisition LLC ("Acquisition LLC"). Acquisition LLC is a Delaware limited liability company, whose sole member is P2 Upstream Acquisition Co. ("Acquisition Co."). Acquisition Co. is a corporation formed under the laws of the State of Delaware.

Because Merrick and Acquisition Co. are both incorporated in Delaware, they are considered citizens of Delaware, their state of incorporation. No question about that. Both Merrick and Acquisition Co. are also considered citizens of the states, if any, in which they have their principal place of business. *See* 28 U.S.C. § 1332(c)(1). And that is where the dispute lies.

Trinity alleges that Merrick and Acquisition Co. are holding companies without active business operations. This means, according to Trinity, that both

corporate entities have no principal place of business and should be considered citizens only of their state of incorporation—Delaware. *See Centcorp Invs., Ltd. v. Folgueira*, No. 13-23019, 2014 WL 12584298, at *2 (S.D. Fla. Sept. 4, 2014) ("[A] holding company without active business operations . . . has no principal place of business and its citizenship is controlled by its place of incorporation or formation."). If Merrick and Acquisition Co. are both solely Delaware citizens, then, by extension, P2ES is also only a Delaware citizen. In such a world, removal would have been proper because complete diversity of citizenship exists with Trinity being a Colorado citizen and P2ES being a Delaware citizen.

P2ES takes a much different tack. P2ES argues that Merrick and Acquisition Co. are not inactive or defunct holding companies, but rather active corporations with ongoing concerns. *See* Dkt. 15-1 at 3 ("Merrick and Acquisition Co. are active and on-going concerns and have at least one active subsidiary—P2ES."); *id.* at 4 ("Merrick and Acquisition Co. both continue to generate revenue, and are neither inactive nor dissolved."). This is important, says P2ES, because these corporate entities, which admittedly both function as holding companies, still have a principal place of business. And that principal place of business, P2ES asserts, is located in Colorado.

As noted, a corporation's principal place of business refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Friend*, 559 U.S. at 92–93. "It is the place that Courts of Appeals have called the corporation's 'nerve center.'" *Id.* at 93. The nerve center test looks to the "center of overall direction, control, and coordination," and "[c]ourts do not have to try to weigh corporate functions, assets, or revenues different in kind, one from the other." *Id.* at 96. "[I]n practice [the principal place of business] should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

5

Both Acquisition Co. and Merrick are holding companies: "they do not have operations, nor do they produce goods, have employees or officers, or lease or own separate facilities. Their roles are confined to owning interests in [their] subsidiaries, including P2ES." Dkt. 15-1 at 3. Unlike an operating company, a holding company is somewhat unique because it "engages in little activity, so there is little to direct, control, or coordinate. Its purpose—holding interest in other companies—is passive." *3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018) (citation omitted); *see also Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 353 (3d Cir. 2013) ("Because it is a holding company, not an operating company, GSK Holdings has no sales or production, only one part-time employee, and little infrastructure. Instead, its activities consist primarily of owning its interest in GSK LLC, holding intra-company accounts, issuing and receiving dividends, and paying taxes."). Nonetheless, a holding company's principal place of business, or "nerve center," is still determined by where its decisions are made because "the salient question [is] where the company's policies originate." *Utopia Studios, Ltd. v. Earth Tech, Inc.*, 607 F. Supp. 2d 443, 445 (E.D.N.Y. 2009). Because a holding company "does little other than passively own other companies and supervise their management," many courts have held that the principal place of business for such a company is where the company's board meetings are held, "unless evidence shows that the corporation is directed from elsewhere." *Horn*, 880 F.3d at 463, 468; *see also id.* at 466 ("[N]umerous post-*Hertz* [district court] cases . . . have determined the principal place of business of a holding company by looking to the location in which its officers or directors meet to make high-level management decisions."); *Johnson*, 724 F.3d at 354 ("For a holding company such as GSK Holdings, relatively short, quarterly board meetings may well be all that is required to direct and control the company's limited work."); *Nation v. Atlas Techs., LLC*, No. 2:18-cv-14021, 2019 WL 1748428, at *2 (E.D. Mich. Apr. 19, 2019) ("[I]n deciding the principal place of business of a holding company, courts have focused

on where the holding company decides how to manage its assets, which is usually where the board of directors meet.").

Relevant here, Acquisition Co.'s management decisions are controlled by its Board of Directors. According to a declaration provided by Mark Kilpatrick, the Chief Financial Officer of P2ES, Acquisition Co.'s board meetings are "facilitated" from its parent company's headquarters located at 1670 Broadway, Suite 2800, Denver, Colorado 80202 ("Denver Address"). Dkt. 15-1 at 3. And what exactly does that mean? At a recent oral hearing, P2ES's counsel explained that Acquisition Co.'s board members do not personally appear at the Denver Address for board meetings, but rather participate remotely on their computers or mobile devices via Microsoft Teams. The term "facilitate[]," P2ESs counsel explained, simply means that someone at the Denver Address sends out notice of the board meeting and ensures that the board members timely join the online meetings. In my mind, this is far from persuasive evidence that Acquisition Co.'s so-called "nerve center" is located in Colorado. Simply because an individual sends an email from the Denver Address to board members across the globe scheduling a board meeting and providing the link or password necessary to join that board meeting remotely does not automatically mean that the Denver Address is the place where the board meetings are held. Truth be told, Acquisition Co.'s board members can be located, literally, anywhere across the country—or across the world—during the board meetings. This is particularly likely because P2ES acknowledges that Acquisition Co.'s board members live in many locales: Arizona, California, Colorado, New York, Texas, and the United Kingdom.

In arguing that Acquisition Co.'s principal place of business is situated in Colorado, P2ES points to the following: Acquisition Co. pays Colorado state income tax, identifies the Denver Address as its primary business address in federal and state income tax returns, and two of its directors, including the Chairman of the Board, reside in Colorado. Such evidence does little to demonstrate that anything is done in Colorado to actually "direct, control, and

7

coordinate the corporation's activities." *Friend*, 559 U.S. at 92–93. That is the critical inquiry. Simply paying Colorado state income taxes, identifying a Denver office building as its primary address, and putting several Colorado citizens on its board of directors is not enough to warrant a finding that Colorado is Acquistion Co.'s principal place of business for diversity purposes. *See, e.g., Grand Union Supermarkets of V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 412 n.3 (3d Cir. 2003) ("[T]he mere fact that [a company pays franchise taxes in the Virgin Islands] does not in itself make the Virgin Islands its principal place of business."). Because no evidence has been presented to me indicating that Acquisition Co.'s board of directors makes any decisions at any particular locale, I conclude that Acquisition Co. does not have a principal place of business. Its citizenship for diversity purposes is governed solely by its state of incorporation—Delaware.

Turning to Merrick, it is undisputed that Merrick does not have its own board of directors that direct and controls its operations. Instead, P2ES notes that "Merrick's management decisions, both high-level and low-level, are controlled by its parent company." Dkt. 15-1 at 3. Even if true, this is of no aid to P2ES because it is well-settled that "in determining a corporation's principal place of business, a district court's inquiry must focus *solely* on the business activities of the corporation whose principal place of business is at issue." *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 62–63 (1st Cir. 1993); *see also Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1142 (3d Cir. 1972) ("[A] subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business."); *Astra Oil Trading NV v. Petrobras Am. Inc.*, No. H-09-1274, 2010 WL 3069793, at *2 (S.D. Tex. Aug. 4, 2010) ("Generally, when a subsidiary is incorporated separately from its parent, it is treated as an independent entity for purposes of determining federal court jurisdiction."). Simply put, the current state of the law provides absolutely no basis for me to impute the parent company's principal place of business, whatever it might be, to Merrick based on the claim that Merrick's

operations are run by its parent company, as "[c]itizenship can neither be delegated nor imputed." *Hershfeld v. JM Woodworth Risk Retention Grp., Inc.*, No. 16 CIV. 6369, 2017 WL 1628886, at *3 (E.D.N.Y. May 1, 2017). Backed into a corner, P2ES stresses that Merrick pays Colorado state income tax and identifies the Denver Address as its primary business address. But, as explained above, those connections are nowhere near enough to establish that Colorado is Merrick's principal place of business. In reviewing the record before me, there is a lack of evidence, admissible or otherwise, indicating that any of Merrick's corporate activities take place in Colorado. Accordingly, I conclude that Merrick does not have a principal place of business. Like Acquisition Co., Merrick's citizenship for diversity purposes is governed solely by its state of incorporation—Delaware.

Now that I have conclusively determined the citizenship of all the relevant entities, it is clear that this Court possesses diversity jurisdiction. As limited liability companies, P2ES's and Trinity's citizenship is determined by the citizenship of all their members, tracing their citizenship down the various organizational layers when necessary. On the plaintiff's side, P2ES ultimately has two members whose citizenship can be assessed—Acquisition Co. and Merrick. Both those entities are Delaware citizens—and citizens of no other states—for diversity purposes. On the defense side, Trinity is treated as a Colorado citizen. The diversity statute allows me to exercise diversity jurisdiction when the plaintiff does not share the same state citizenship any defendant. *See Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). That is exactly the situation here. The Motion to Remand should be denied.

## CONCLUSION

For the reasons identified above, I recommend that P2ES's Motion to Remand (*see* Dkt. 15) be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure

to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 13th day of February, 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE